## ST. LOUIS CORSET CO. v. WILLIAMSON CORSET & BRACE CO. et al.

(Circuit Court, E. D. Missouri, E. D. December 4, 1897.)

### No. 3,902.

PATENTS—CONSTRUCTION OF CLAIMS—INFRINGEMENT—CORSETS.

The McCabe patent, No. 254,992, for an improvement in corsets, consisting of a hip section composed of a stayed body, and a corded overlay extending from the top of the hip section to about the waist line, and then cut away over the hips so as to expose a portion of the section, is old as to both these elements, and, if valid at all, is limited to the special combination employed therein. Held, therefore, that the patent was not infringed by a corset which lacks the element of the hip section composed of a stayed body substantially as described in the patent.

This was a suit in equity by the St. Louis Corset Company against the Williamson Corset & Brace Company and others for alleged infringement of a patent for improvements in corsets.

W. C. & J. C. Jones, for complainant.

Geo. H. Knight, for defendants.

ADAMS, District Judge. This is a suit to enjoin the alleged infringement of letters patent No. 254,992, issued to William Mc-Cabe, for an improvement in corsets. The defenses are anticipation and noninfringement. The claim of the patent is for a combination of two elements: (1) A hip section composed of a stayed body; (2) a corded overlay extending from the top of the hip section to about the waist line, and then so cut away over the hip as to expose a portion of the section. This hip section is undeniably an old element. It is described in the patent as "cut in the usual manner, from doubled fabric, so as to form pockets for the vertical stays, a, a, these pockets being formed in the usual manner by lines of stitching securing the two parts together, and to leave a space between the lines of stitches for the insertion of the stays." From this description, as well as from the evidence, it is clear that the first element consists of the well-known side or hip section of a corset made up in the usual way, with provision for vertical stays. The corded overlay constituting the second element, according to the description of the patent, is composed of two thicknesses of fabric, with series of cords, or their equivalents, laid close to each other, and stitched between the cords in the usual manner for making corded work. This is intended to give firmness and strength to the side section over which it is placed, and the two elements as combined are said to produce a new and beneficial result.

It is familiar doctrine that the claims and specifications of a patent must be construed in the light of the state of the art as it existed at the date of the patent. The McCabe patent, now under consideration, was issued March 14, 1882, on an application filed November 16, 1881. Prior to the last-mentioned date it appears that numerous patents had been granted to divers persons for alleged improvements in corsets. Of these, attention is called to the Adler patents, of dates February 1, 1881, and November 19, 1881, respectively, and the Allen patents, of dates November 16, 1880; and July 20, 1880, respectively. These Adler patents concern the hip sections of the corset, and clearly contemplate vertical stays therein. These stays are not exactly the same as in the McCabe patent, but are referred to only for the purpose of disclosing the state of the art in question at the time. The Allen patents relate also to the hip or side section of a corset, and clearly contemplate the use of an overlying stiffening substance to serve the same general purpose as that claimed to be subserved by the McCabe overlying device, called in the claim a "corded overlay."

The proof fairly shows that the hip section, the vertical stays therein, and the overlying stiffening piece, had each and all been well known to the art, and had been used to perform the same general function which is claimed for the complainant's device, prior to the date of McCabe's application for the patent in suit. The best that complainant can claim for the McCabe patent is that these old elements, in the particular combination therein employed, perform some new and useful function, and thereby create the novelty necessary to support the patent. It is very doubtful if this claim can be sustained. The Allen patents, already referred to, seem to embody

practically all the elements of the McCabe combination.    The general design and purpose contemplated in both seem to be the same, and it is very doubtful if any materially new or useful result is achieved by the McCabe device.    But the decision of the case does not depend upon a finding that the McCabe patent is void for want of novelty; in other words, that the invention of the patent was anticipated by Allen, as claimed by the defendants.    The patent in suit, being a combination of old elements, is not infringed by any device in which there is an absence of any essential element of the patent.    P. H. Murphy Mfg. Co. v. Excelsior Car-Roof Co., 76 Fed. 965.    The specification and description of the McCabe patent, to which the claim specifically refers, show, as already seen, that the element of the side or hip section (upon which the other element of an overlay is placed) is old.    It is cut in the usual manner from doubled fabric.    It is formed into pockets for the insertion of vertical stays in the usual manner, by lines of stitches securing the two parts together.    This is plain language, and clearly contemplates both the doubled fabric and the pockets for stays.    According to the proof, this in itself would make a complete and merchantable corset.

The defendants' corset, claimed to infringe the complainant's patent, does not contain this element, or any equivalent of it.    There is but one thickness of fabric under defendants' overlay, and no stitches at all to make pockets therein.    The underlying fabric of defendants' corset seems to be employed only for the purpose of a framework on which to support the corded overlay.    The corded overlay practically constitutes all there is of the side section.    I have not overlooked the qualification or limitation found in a subsequent part of the specification of complainant's patent, namely, "The vertical stays, a. a. need only extend from the bottom upward to meet the curved edge of the overlay"; but this qualification does not dispense with the double fabric throughout the entire dimensions of the underlying section, and does not dispense with the requirement of stitching the same throughout, as first specified.    Again, the defendants' corset contains no vertical stays, and, in my opinion, no equivalent thereof, either throughout the dimensions of the underlying section, or from the bottom of the section up to the corded edge of the overlay.    The claim of the patent, taken in connection with the specifications found in the description, to which reference is made in the claim, and the drawings therein also referred to, considered in the light of the art as it was then understood and practiced, satisfactorily establish that the words "stayed body," as used in the claim, must be construed to mean a body (or hip section) supported and strengthened by steel, bone, or some other attenuated, elastic substance, inserted in the pockets, as shown and described in the patent, and running vertically from the bottom up the section, at least to the curved edge of the overlay, throughout the part fitting over the hip.    It is contended that the thin piece of cloth constituting an interlining between the two pieces that form the part fitting over the hip, as employed by the defendants, is the equivalent of complainant's vertical stays.    This is satisfactorily an-

swered by the proof that this interlining serves no beneficial purpose, other or different from what would be served by a corresponding increase in the thickness of the two outside pieces. If this unimportant piece of cloth is the equivalent of complainant's vertical stays, the invention suggested by the vertical stays would not reach the dignity or importance of a patentable invention. The defendants' employment, therefore, of the thin interlining, under the circumstances, cannot be held to be an equivalent of the vertical stays of the patent.

It may be conceded that the defendants employ the corded overlay in substantially the same way, and for substantially the same purpose, as contemplated in complainant's patent; but inasmuch as defendants do not make use of the other element of complainant's patent, namely, the hip section composed of a stayed body, substantially as described in complainant's patent, there is, under the authority already cited, no infringement of complainant's patent. The bill must be dismissed.